No. 22-1906

IN THE

# United States Court of Appeals

FOR THE FEDERAL CIRCUIT

VLSI TECHNOLOGY LLC,

*Plaintiff-Appellee*,

v.

INTEL CORPORATION,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Western District of Texas
No. 6:21-cv-00057, Hon. Alan D. Albright

## SUPPLEMENTAL BRIEF OF APPELLEE VLSI TECHNOLOGY LLC

Jeffrey A. Lamken
Michael G. Pattillo, Jr.
Rayiner I. Hashem
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000
jlamken@mololamken.com

Morgan Chu
*Counsel of Record*
Benjamin W. Hattenbach
Alan J. Heinrich
Amy E. Proctor
Charlotte J. Wen
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
mchu@irell.com

*Counsel for Appellee VLSI Technology LLC*
*(Additional Counsel Listed on Inside Cover)*

Dominik Slusarczyk
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Babak Redjaian
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
(949) 760-0991

*Counsel for Appellee VLSI Technology LLC*

# PATENT CLAIMS AT ISSUE

**Representative claim 9 of the '373 Patent:**

An integrated circuit, comprising:

[a] a memory that operates using an operating voltage, wherein the memory is characterized as having a minimum operating voltage;

[b] a memory location that stores a value representative of the minimum operating voltage;

[c] a first voltage regulator for supplying a first regulated voltage;

[d] a circuit that provides a function and uses a first regulated voltage;

[e] a second voltage regulator for supplying a second regulated voltage, wherein the second regulated voltage is greater than the first regulated voltage; and

[f] a power supply selector that supplies the first regulated voltage as the operating voltage of the memory when the first regulated voltage is at least the minimum operating voltage and supplies the second regulated voltage as the operating voltage when the first regulated voltage is below the minimum operating voltage, wherein while the second regulated voltage is supplied as the operating voltage, the circuit uses the first regulated voltage.

Appx111 (13:7-28).

**Representative Claim 14 of the ’759 Patent:**

A system, comprising:

[a] a bus capable of operation at a variable clock frequency;

[b] a first master device coupled to the bus, the first master device configured to provide a request to change a clock frequency of a high-speed clock in response to a predefined change in performance of the first master device, wherein the predefined change in performance is due to a loading of the first master device as measured within a time interval; and

[c] a programmable clock controller having an embedded computer program therein, the computer program including instructions to:

[d] receive the request provided by the first master device;

[e] provide the clock frequency of the high-speed clock as an output to control a clock frequency of a second master device coupled to the bus in response to receiving the request provided by the first master device; and

[f] provide the clock frequency of the high-speed clock as an output to control the variable clock frequency of the bus in response to receiving the request provided by the first master device.

Appx123-124 (8:50-9:4).

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1906

**Short Case Caption** VLSI Technology LLC v. Intel Corp.

**Filing Party/Entity** VLSI Technology LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/12/2023

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| VLSI Technology LLC | | CF VLSI Holdings LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

4. **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

IRELL & MANELLA LLP: Christopher Abernethy; Benjamin Manzin-Monnin; Iian Jablon; Jordan Nafekh; Keith Orso; Elizabeth C. Tuan; Ian Robert Washburn; Josh Gordon (*former*); Molly J. Russell (*former*); Michael Strub, Jr. (*former*); Brian M. Weissenberg (*former*)

MANN TINDEL THOMPSON: J. Mark Mann; Andy Tindel

STECKLER WAYNE CHERRY & LOVE, PLLC: Craig D. Cherry

ROTHWELL FIGG ERNST & MANBECK, P.C.: Rachel Echols (*former*); Steven Lieberman (*former*); Daniel McCallum (*former*)

# TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................ 1

I. Annavaram's '373 Patent Benefit Analysis .................................................. 2

II. Annavaram's '759 Patent Benefit Analysis .................................................. 6

CONCLUSION .................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

## CASES

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ....................................................................6

## ARGUMENT

VLSI respectfully submits this brief to address potential confusion regarding two factual issues. The panel asked whether VLSI's calculation of the '373 patent's benefits included the value of non-infringing features, insofar as Dr. Annavaram "used" data about the "Core C7" power state in addition to data about "Package C7" to select a "workload" in Intel's Power Model. *See* Arg. 12:15-13:30; 35:59-36:44; 38:03-41:34. The answer is no. Annavaram quantified the '373 patent's power savings based only on Intel's use of the invention in Package C7, using the Intel data that most "close[ly] match[ed]" his own Package C7 data. Appx1569-1571; Appx1583-1584. He "used" Core C7 (and Package C7) data only to validate that Intel's workloads simulated ***typical computer use***, which involves all power states.[1]

The panel also asked about VLSI's calculation of '759 patent benefits based on the RING domain. Arg. 13:31-16:21; 18:32-21:47. Speed Shift, the infringing feature, controls the RING ***domain*** as well as the cores. Dr. Conte thus started with Speed Shift's overall benefit—an already apportioned figure—and reduced it further to anticipate a non-infringing alternative that controls the RING domain alone.

In all events, Intel's arguments are narrow and directed to the periphery of Annavaram's methodology, not its core. They were properly addressed to the jury.

---

[1] Annavaram holds an endowed chair in electrical power engineering at the University of Southern California and worked on power efficiency at Intel.

## I. ANNAVARAM'S '373 PATENT BENEFIT ANALYSIS

A. The panel raised questions relating to Intel's argument that Annavaram "relied on non-accused products and features to select a [Power Model] workload." Intel.Reply.25; *see* Arg. 12:15-13:30; 35:59-36:44; 38:03-41:34. To be clear, he computed power savings attributable to the invention based only on power-savings achieved by the ***accused processors*** in the ***infringing Package C7*** state.[2] Appx1538-1540; Appx1569-1571. He referred to data about Core C7, in addition to Package C7, only to select and validate a "workload" model from the limited set of workloads built into Intel's Power Model. Appx1583-1584. The workloads "simulate[ ] the end user behavior," Appx1536-1537, to characterize how the simulated processor is "used": the application it is running (*e.g.*, Angry Birds), and how much time it spends in each power state ("residency"), Appx1533-1534; Appx3141.

To verify the selected workload reflected typical use, Annavaram reviewed data about all power states. Appx1569-1571; Appx1583-1584. The Power Model uses that data to compute ***total*** power use, which reflects not only Package C7, where the invention is used, but also other states, such as Core C7, where it is not used. Appx1530-1534. He then excluded the value of non-infringing features and power states by calculating the ***difference*** in power use between simulated versions of the

[2] Core C7 is a processor power state, Appx18666-18669, where individual cores are shut off, Appx18670-18671. Package C7 is a power state where all cores and the CLR domain/RING are shut off. Appx18671-18672; *see* VLSI.Br.10-11.

accused processors differing only in their use of the invention (***in Package C7***).

Annavaram made no "error" in validating Intel's workload models using his own data. Intel.Reply.25; *see* Arg. 44:00-44:50. Annavaram compared his residency data (for how much time the processor spent in each state) to Intel's, comparing his Package C7 to Intel's Package C7, his Core C7 to Intel's Core C7. Appx1569-1571; Appx1583-1584. He did not alter Intel's data or mix up values. Indeed, Intel does not argue that there is anything wrong with the "Nancy" workload he selected. Asked whether "the workloads chosen by Annavaram are not representative," Intel's expert answered "no." Appx1994. Nor did he identify "different . . . workloads" that would have yielded smaller power savings. Appx1995-1996.

Intel's suggestion that the choice of workload could capture value from non-infringing products and features, Intel.Br.25; *see* Arg. 45:13, is factually incorrect. The workload does not alter the simulated processors' technical characteristics, such as the power states in which the infringing "mux" operates. That is determined by a ***different*** Power Model input, the simulated "processor model." Appx1533-1534; *see* Appx3137-3140. Annavaram undisputedly selected models of the ***accused*** "Haswell" and "Broadwell" processors, which were configured to switch "the power [supply] to the C6 SRAM" when "the ring sleeps" (*i.e.*, in Package C7). Appx1538-1540. Nor is Intel correct to suggest that there is a particular "workload associated with actually using" the infringing feature. Appx1558. ***All*** of the workload models

reflect use of the infringing Package C7 state; they contain Intel's own data for the full range of power states encountered in real-world use. Appx3137-3140.

The rest of Annavaram's methodology stands unchallenged. He determined the invention's power savings by comparing infringing processors with ones not utilizing the invention, "keeping everything else constant." Appx1531; Appx1537-1539. He used simulated models of the accused Haswell and Broadwell processors built into Intel's Power Model, and versions of those models without the infringing feature. Appx1539; Appx19465.[3] He tested those models using the selected workload (after verifying it is representative) and calculated the patent's incremental benefit by measuring the ***difference in total power use*** between the infringing and non-infringing models. Appx1537-1540. Intel does not challenge Annavaram's models or his actual calculation of power savings. It has never argued that those models, or his comparison of them, somehow attributed power savings from non-accused features or power states to the invention. Appx3533-3549; Appx4963.

B. At argument, Intel's counsel stated that Annavaram "chose 80 percent instead of 40 percent" for the "residency and workload inputs," and accused him of "***inputting numbers*** that are twice as much." Arg. 44:00-44:50 (emphasis added). That is incorrect. Counsel was referring to ***Annavaram's*** Core C7 and Package C7

[3] The non-infringing variants are unable to save additional power in Package C7 by switching the C6 SRAM to a second supply while shutting off the RING voltage. Appx1539-1540; *see* Appx1537-1538; Appx19465; VLSI.Br.10-12, 15, 51.

data, which he undisputedly did not incorporate into his "computation" or as an "input" into the Power Model; they only informed his choice of Intel workload. Appx1580-1584. The data used in the Power Model were ***Intel's data*** reflecting its determinations about typical usage, including time spent in Package C7 in typical use. Intel does not contend that the workload Annavaram selected ("Nancy") had unrealistically high Package C7 values, or any other material errors.

Intel's statement that Annavaram "took a higher number for a non-accused feature," referring to Core C7, and "applied it to the accused feature," referring to Package C7, is also incorrect. Arg. 44:02-44:18. Intel never identifies anywhere Annavaram did that. He selected the Intel-supplied workload where the Package C7 data most "close[ly] match[ed]" his Package C7 data, and the Core C7 data most closely matched his Core C7 data. Appx1569-1571; Appx1583-1584. He then calculated the patent's benefit based solely on its use ***in Package C7***. Pp. 2-3, *supra*.

Intel's counsel also suggested that Annavaram's process somehow resulted in a "number [that] comes out twice as much." Arg. 45:25-45:32. Counsel was comparing ***Annavaram's*** data for Core C7 versus Package C7, Appx3132, ***not*** calculations of power savings using his selected dataset as compared to a different dataset. Intel's sole support (at Reply.Br.26) is its expert's testimony speculating about what might happen if Annavaram had mixed up his "76 percent" Core C7 figure with his "41 percent" Package C7 figure. Appx1975-1976. But there was no

mix-up, and those figures undisputedly were not entered into the Power Model. Appx1569-1571; Appx-1583-1584. In fact, Intel's expert would not say that "the workloads chosen by Dr. Annavaram are not representative," and conceded he did not perform calculations with "different workloads" to determine if any of Intel's ***other workloads*** would have yielded different results. Appx1994-1996.

* * *

Intel does not challenge Annavaram's simulation models or actual power-use calculation. Its narrow challenge is to his choice of workload against which to test those models, but it does not identify anything wrong with the selected workload. The district court did not abuse its discretion in determining that Intel's quibbles "go to the weight, not admissibility" of Annavaram's opinion. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854-56 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

## II. ANNAVARAM'S '759 PATENT BENEFIT ANALYSIS

At argument, Intel's counsel asserted that the RING domain "indisputably includes non-infringing features," and Annavaram was required to apportion down to the RING ***bus***—the interconnect wires within the RING domain. Arg. 13:46-14:23. The infringing "feature," however, is Intel's "Speed Shift," Appx76, which controls the speed of the cores ***and*** the entire RING domain. Infringed claim 14 recites that the "computer program . . . instructions" in the "programmable clock controller" "provide . . . an output to control a clock frequency of a ***second master***

***device***" (core), and "an output to control the variable clock frequency of the ***bus***." Appx123-124(8:50-9:4) (emphasis added). Speed Shift infringes because, in response to a request from one core, it "will shift the speed of other cores," and also "adjust[] the frequency . . . for ***the ring***." Appx2699-2703 (emphasis added); *see* VLSI.Br.13-15.

VLSI thus was entitled to base damages on the benefits resulting from being able to adjust the speed of the cores ***and*** the RING more rapidly. Conte testified that, according to Intel's testing, Speed Shift yielded an overall benefit in speed compared to a prior-art approach, Appx2722, that lacks the '759 patent's programmable clock controller, Appx2099-2100; *see* VLSI.Br.7-8. That figure was therefore already apportioned to the incremental benefit of infringing Speed Shift.

Conte nonetheless performed ***further*** apportionment. Although Intel did not propose any non-infringing alternative, Appx2335, Conte posited that Intel might have avoided infringement by using the invention to adjust the speed of the cores, but not "the ring," Appx2718-2719; *see* Appx3215. He thus asked Professor Annavaram to determine the "fraction of power used by the ring domain," to approximate the share of the overall improvement provided by Speed Shift attributable to controlling the RING (as opposed to the cores). Appx2722-2723.

Intel does not directly challenge Conte's approach—it does not argue that it was an error for Conte to value the '759 patent based on the "fraction of power . . .

used by the ring domain." Appx2722-2723. Indeed, the '759 patent explains that changing "bus" frequency can affect the performance and "power consumed by the devices ***coupled to the bus***." Appx121 (3:29-51) (emphasis added). Moreover, Intel's RING is a single, synchronous unit that runs on a single frequency and voltage. Appx18085. It would not even be "commercially acceptable" to run the bus at a different frequency and/or voltage from the rest of the RING. Appx18086. The '759 patent's benefit of rapidly changing bus frequency thus is conferred on the entire RING—not only the "interconnect wiring." Appx18086.[4]

In its brief, Intel made a narrower argument: It asserted that Conte directed Annavaram to focus on the "bus" alone, and that Annavaram "mistakenly" computed the fraction of power used by the whole RING. Intel.Br.61. There was no miscommunication—Conte explained that he used the term " 'ring' bus" in his report to refer to the whole "CLR [RING] domain," which is a single, synchronous unit. Appx18085-18086; *see* Appx2722-2723. That is what Annavaram measured.

## CONCLUSION

The Court should affirm the judgment below.

---

[4] Intel's response that Annavaram was looking at "power usage, not frequency" is misplaced. Intel.Reply.26. The RING "runs in a single voltage/power . . . domain," and thus its frequency and power use rise and fall together. Appx18085. Moreover, the purpose of controlling clock speed is to balance performance with power usage; that is why Conte looked to the share of power used by the RING to approximate the share of Speed Shift's overall performance improvement that should be ascribed to controlling the RING clock speed versus that of the cores. Appx2722-2723.

October 12, 2023

Respectfully submitted,

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken
MOLOLAMKEN LLP
Michael G. Pattillo, Jr.
Rayiner I. Hashem
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
jlamken@mololamken.com

Morgan Chu
*Counsel of Record*
Benjamin W. Hattenbach
Alan J. Heinrich
Amy E. Proctor
Dominik Slusarczyk
Charlotte J. Wen
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010 (telephone)
mchu@irell.com

Babak Redjaian
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
(949) 760-0991 (telephone)

*Counsel for Appellee VLSI Technology LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-1906

**Short Case Caption:** VLSI Technology LLC v. Intel Corp.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 1911 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 10/12/2023

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken