**No. 2022-1906**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

VLSI TECHNOLOGY LLC,

*Plaintiff-Appellee*,

*v.*

INTEL CORPORATION,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of Texas in Case No. 6:21-cv-00057-ADA, Judge Alan D. Albright

**RESPONSIVE SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLANT INTEL CORPORATION**

AMANDA L. MAJOR
STEVEN J. HORN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

MARY V. SOOTER
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
(720) 274-3135

WILLIAM F. LEE
JOSEPH J. MUELLER
LAUREN B. FLETCHER
ALISON BURTON
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
William.Lee@wilmerhale.com

*Attorneys for Defendant-Appellant Intel Corporation*

October 23, 2023

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellant Intel Corporation certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Intel Corporation.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

WILMER CUTLER PICKERING HALE AND DORR LLP: Arthur W. Coviello, Jeffrey A. Dennhardt, Felicia H. Ellsworth, Jordan L. Hirsch, Thomas Lampert, Gregory H. Lantier, James M. Lyons, George F. Manley, Alexis Pfeiffer, Kate Saxton, Joshua L. Stern, Louis W. Tompros, Anh-Khoa Tran, Paul T. Vanderslice

KELLY HART & HALLMAN LLP: J. Stephen Ravel, Kelly Ransom, Sven Stricker (former)

PILLSBURY WINTHROP SHAW PITTMAN LLP: Brian C. Nash (former)

KIRKLAND & ELLIS LLP: John C. O'Quinn

James Eric Wren, III

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below) [ ] No [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

Filed separately.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: October 23, 2023

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ....................................................................... i

I. FOR THE '373 PATENT, DR. ANNAVARAM ERRONEOUSLY USED THE NON-ACCUSED CORE C7 DATA TO SELECT THE POWER MODEL INPUTS. ....................................................................................... 1

II. FOR THE '759 PATENT, VLSI'S EXPERTS ERRONEOUSLY USED THE POWER DRAWN BY THE ENTIRE RING DOMAIN INSTEAD OF THE RING BUS. ....................................................................................... 8

CERTIFICATE OF COMPLIANCE

VLSI's supplemental brief fails to justify the errors its technical experts made in quantifying both patents' alleged benefits. VLSI repeats arguments already made while also raising new arguments that are unsupported, contrary to Dr. Annavaram's and Dr. Conte's admissions, and inconsistent with VLSI's prior statements to this Court. VLSI's belated arguments notwithstanding, the record confirms that VLSI's experts provided unreliable opinions that overstated the patents' benefits. VLSI's damages theories should have been excluded and cannot support the jury's award.

## I. FOR THE '373 PATENT, DR. ANNAVARAM ERRONEOUSLY USED THE NON-ACCUSED CORE C7 DATA TO SELECT THE POWER MODEL INPUTS.

Dr. Annavaram sought "to calculate the power savings of the accused C6SRAM … feature using Intel's Power Model, a spreadsheet that estimates power characteristics based on thousands of selected inputs." Blue Br. 59-60.

- First, Dr. Annavaram ran MobileMark benchmark tests on six laptops (four of which contained non-accused chips) to generate "residency data" reflecting how often the chips and their cores resided in various states. Appx3128-3133(¶¶50-59); Appx1555-1560. His data indicated that the non-accused "Core C7" state occurred about 80% of the time and the accused "Package C7" state about 40% of the time. Appx3132(¶59); Appx1558-1560.[1]

[1] The Package C7 residency is necessarily ***less than*** the Core C7 residency because the Core C7 state occurs when an individual core is asleep, whereas the Package C7 state occurs only when ***all*** cores are asleep. *See* Appx1388; Appx18670-18672.

- Next, Dr. Annavaram used data generated from his laptop tests to select certain inputs in the Intel Power Model. Appx1533-1534; Appx1555-1561; *see* ECF 58, Attach. 2 (PTX-77) at 3900. According to Dr. Annavaram, the purpose of this step was "[t]o approximate use of the [accused] C6 SRAM." Appx1558-1559. Yet rather than use the data for the accused Package C7 state, he used the data for the ***non-accused*** Core C7 state "to select the residency and workload settings in the Intel Power Model." Appx1580-1581. More specifically, Dr. Annavaram looked for the Power Model inputs that most closely "match[ed]" the Core C7 residency data, which led him to select the "Nancy_HswULT" and "MM12_OP_PSR_on_WiFi-on_19x10" residency and workload inputs. *Id.*; Appx1558-1560; Appx3141(¶91).[2]
- Lastly, Dr. Annavaram used the Intel Power Model with his selected inputs "to compute the power consumption." Appx1530.

Dr. Annavaram's calculations did not reliably or accurately quantify the power-saving benefits of the accused feature. As Intel's opening brief explained, Dr. Annavaram "mistakenly used data for ***Core C7 rather than Package C7***" to "'select … settings in the Intel Power Model,' even though Core C7 'does not reflect use of' the accused C6SRAM multiplexer." Blue Br. 60 (quoting Appx1578-1581)

[2] At times, Dr. Annavaram and the parties have referred to the residency and workload inputs collectively as the "workload." *E.g.*, Appx3141(¶91).

(emphasis altered). This error alone means that Dr. Annavaram's power-savings estimates did not "approximate use of" the accused C6SRAM feature as they were intended to do. *See* Appx1558-1559. Even worse, Dr. Annavaram's use of the wrong data to select the Power Model inputs inflated his calculations because, as Intel's expert testified, it overstated the time spent in the accused Package C7 state "by nearly a factor of two[,]" which "directly translate[d] to an overestimate in [the] power savings estimate by the same ratio." Appx1975-1976 (cited at Blue Br. 60).

When addressing this issue in its response brief, VLSI did not dispute that Dr. Annavaram "used data for Core C7 rather than Package C7" (Blue Br. 60) to select the Power Model inputs. Red Br. 57-58. VLSI instead argued that Dr. Annavaram's use of the Core C7 data was "immaterial" because he used that data only to select Power Model inputs, and not directly in any computation. *Id.* But as Intel and its expert have explained, Dr. Annavaram's error infected his calculations because he selected the Power Model inputs to "match" the non-accused Core C7 data, and selecting the wrong inputs will lead to the wrong output when the Power Model performs its calculations—here, by overstating the power savings attributable to the accused feature. Blue Br. 60; Gray Br. 25-26; Arg. 43:16-45:34; Appx1975-1976.

In its supplemental brief, VLSI has changed course and now contends that Dr. Annavaram ***also*** used the Package C7 data to select his Power Model inputs. VLSI cites—but noticeably does not quote—two portions of Dr. Annavaram's testimony

as alleged support for its claim that Dr. Annavaram "compared his residency data … [for] Package C7 to Intel's Package C7[.]" VLSI Supp. Br. 3; *see id.* at 1, 2, 5. But in the cited testimony, Dr. Annavaram merely stated that he "bolded" a row with data for the Package C7 state in his expert report (Appx1569-1571) and that he looked across a "whole spectrum of numbers to find -- looking for something like a correlation across multiple numbers" (Appx1583-1584). Notably, Dr. Annavaram never testified that he used the Package C7 data to select his residency and workload settings in the Power Model. On the contrary, he admitted that the row of Core C7 data was ***"the one"*** row of data he used to select those inputs:

> Q. Now, [VLSI's counsel], on his questions to you just a few moments ago … noted that there are also some other rows that are in bold that say "package C-states." Do you see that, sir?
>
> A. Correct.
>
> Q. But, sir, the row that you used to select the inputs in the Power Model was the one at the top, right?
>
> A. I don't recall exactly which, because there are a lot of numbers, but I might have to look at the specific paragraph or something.
>
> …
>
> Q. Well, if it would refresh your memory, you can take a look at your deposition…. It's Page 201, starting at Line 24, carrying you over to the next page 202, Line 12.
>
> A. Yeah. I reviewed it.
>
> ***Q. And that refreshes your memory that the line that we've highlighted in yellow there, the Core C-states, was the one that you used to select the residency and workload settings in the Intel Power Model?***

> ***A. That's correct. Yes.***
>
> ***Q. And we can agree that the one you used does not reflect use of C6 SRAM, correct?***
>
> ***A. If it is a Core C7, it doesn't use the C6 SRAM.***
>
> ***Q. Again, sir, the one that's highlighted in yellow, Core C-states does not use C6 SRAM?***
>
> ***A. That's correct.***
>
> ***Q. And that's the one you used?***
>
> ***A. That's the one I used to match, not to compute.***

Appx1579-1581 (emphases added); *see also* Appx1559-1560 (similar).

VLSI tries to distract from Dr. Annavaram's clear admission by asserting that "Intel does not argue that there is anything wrong with the 'Nancy' workload he selected" and that "Intel does not challenge [Dr.] Annavaram's models or his actual calculation of power savings." VLSI Supp. Br. 3-4. It is unclear how VLSI can make these arguments, as Intel has contended all along that Dr. Annavaram used the wrong data to select the Power Model inputs and those incorrectly-selected inputs led him to overstate the power savings for the accused feature. *See supra* pp. 1-3.

VLSI also contends that Intel's focus on Dr. Annavaram's selection of the Power Model inputs is wrong because "***[a]ll*** of the workload models reflect use of the infringing Package C7 state." VLSI Supp. Br. 3-4; *see id.* at 5 (VLSI claiming "Intel does not contend that the workload [Dr.] Annavaram selected ('Nancy') had unrealistically high Package C7 values"). But the problem for VLSI is that Dr.

Annavaram's selection of the Power Model inputs was intended "[t]o approximate use of the [accused] C6 SRAM." Appx1558-1559. By using the wrong data, Dr. Annavaram inflated how often Intel's products use the accused Package C7 state and therefore overstated the power savings that he attributed to the accused feature. Indeed, as Intel's expert explained in unrebutted testimony, Dr. Annavaram's "mistake" overestimated "the time spent in" the accused Package C7 state "by nearly a factor of two," which "directly translate[d] to an overestimate in [the] power savings estimate by the same ratio." Appx1975-1976.

VLSI next seeks to sidestep the shortcomings of Dr. Annavaram's analysis by criticizing Intel's expert. For instance, VLSI suggests that Dr. Sylvester agreed that the "workloads" chosen by Dr. Annavaram were "representative." VLSI Supp. Br. 3, 6. But VLSI omits that on the very same page it cites, Dr. Sylvester testified more precisely that he was "criticiz[ing] the residencies" portion of the inputs selected by Dr. Annavaram. Appx1994. Elsewhere, Dr. Sylvester fully explained that Dr. Annavaram's decision to use the Core C7 data to select the Power Model inputs "was a mistake" because "he should have used the Package C7 data that he collected because that's where the [accused] C6 [multiplexer] switches." Appx1975-1976.

VLSI further blames Intel's expert for not performing calculations with "different workloads" to determine if they would have yielded different results. VLSI Supp. Br. 3, 6. But it was VLSI's burden—not Intel's—to establish the

reliability of Dr. Annavaram's testimony and to prove the amount of any damages. Even so, Dr. Annavaram's own description of how the Intel Power Model works confirms that different workload and residency inputs will lead to different results. Appx3136-3138(¶¶80-83). And Intel's expert specifically explained how Dr. Annavaram's "mistake" in selecting the Power Model inputs inflated his power-savings calculation "by nearly a factor of two." Appx1975-1976.

VLSI also accuses Intel's counsel of incorrectly stating at oral argument that Dr. Annavaram "chose 80 percent instead of 40 percent" for the "residency and workload inputs." VLSI Supp. Br. 4-5. VLSI mischaracterizes what was said. Consistent with Intel's briefing and Dr. Annavaram's testimony, Intel's counsel explained that Dr. Annavaram used the Core C7 data to select the Power Model inputs. Arg. 43:16-45:34 (explaining that Dr. Annavaram "used" the Core C7 data to "basically determine the workload information he wanted to input into the Intel [Power] Model" and "used the data for Core C7 to do the match" (citing Appx1580-1581)). Nor did Intel's counsel make any misstatement about how Dr. Annavaram's error resulted in a power-savings estimate that was nearly "twice as much" (VLSI Supp. Br. 5), which is exactly what Intel's expert said at trial. Appx1975-1976.

Finally, VLSI rehashes its argument that "Intel's quibbles 'go to the weight, not admissibility[.]'" VLSI Supp. Br. 6. But Dr. Annavaram's mistake renders his analysis unreliable for determining the power-savings benefit of the accused feature.

## II. FOR THE ’759 PATENT, VLSI’S EXPERTS ERRONEOUSLY USED THE POWER DRAWN BY THE ENTIRE RING DOMAIN INSTEAD OF THE RING BUS.

In its opening brief, Intel explained that although Dr. Conte instructed Dr. Annavaram to “‘calculate the ***[r]ing bus’s*** percentage of power drawn’ in Intel’s products” in order to “‘isolate[] the benefits of the [claimed] invention,’” Dr. Annavaram mistakenly “calculate[d] the power usage of the ***entire*** ‘ring domain[.]’” Blue Br. 61 (citing Appx3215(¶1251); Appx1540-1541; Appx1564-1565). In response, VLSI conceded that Dr. Annavaram calculated power usage of the entire ring domain rather than just the ring bus. Red Br. 58-59. VLSI claimed this “was no mistake” because the ring bus and the ring domain operate at the same frequency. *Id.* Intel’s reply explained that VLSI’s proffered excuse did nothing to avoid the error in its experts’ analysis because “Dr. Annavaram was measuring ***power usage***, not frequency.” Gray Br. 26. VLSI’s new arguments raised at oral argument and in its supplemental brief still fail to overcome the problem with its experts’ analysis.

To begin, VLSI says it did not need to determine power savings for just the ring bus because it “was entitled to base damages on the benefits resulting from being able to adjust the speed of the cores ***and*** the RING more rapidly.” VLSI Supp. Br. 6-7. While Intel disagrees with that, it is beside the point. It is not for this Court to review damages theories VLSI believes it could have presented but chose not to.

As to the damages theory it did pursue, VLSI puzzlingly claims that Intel “does not argue that it was an error for [Dr.] Conte to value the ’759 patent based on

the 'fraction of power … used by the ring domain.'" VLSI Supp. Br. 7-8. That is exactly the error Intel identified. Blue Br. 61; Gray Br. 26; Arg. 13:36-16:04, 45:34-46:50. Indeed, contrary to what VLSI now says, Dr. Conte opined that "[t]he closest non-infringing alternative to the '759 patent claims would be a processor with Intel's Speed Shift Technology, but without varying the clock frequency of the ***Ring/Mesh bus***." Appx3215(¶1251) (emphasis added). That is why it was necessary to calculate power usage of only the ring bus—to "exclude the contribution of non-accused technologies, features, and functionalities." *Id.*; *see* Appx3210(¶1236) (Dr. Conte explaining he "intend[ed] to isolate the '759 patent's contribution to Intel's products and to Speed Shift by apportioning Speed Shift's performance improvement to the ***Ring bus*** based on its power usage" (emphasis added)).

VLSI nevertheless tries to justify its experts' calculation of power usage for the entire ring domain by urging that "Intel's RING is a single, synchronous unit that runs on a single frequency" and "its frequency and power use rise and fall together." VLSI Supp. Br. 7-8 & n.4 (citing Appx18085). But as Intel has pointed out, VLSI's focus on frequency is irrelevant since "Dr. Annavaram was measuring ***power usage***, not frequency." Gray Br. 26. If VLSI is now also suggesting that "power use" is the same for the ring bus and the ring domain, that is nonsensical and unsupported. As Intel explained with record citations, the "ring domain necessarily draws more power than one of its components (the bus/mesh) alone." *Id.* (citing Appx5349-

5350(¶¶696-699); Appx5372-5373(¶¶766-767); Appx2232-2234; Appx15488). In fact, Intel's expert showed that, by looking at the whole ring domain (which includes the non-accused CBO and LLC memory), VLSI's experts "overstate[d]" the power used by the ring bus "by at least a factor of two." Appx5372-5373(¶¶766-767).

Finally, VLSI tries to defend its experts' analysis by insisting that when Dr. Conte told Dr. Annavaram to "calculate the [r]ing bus's percentage of power drawn" (Appx3215(¶1251)), he was actually using "ring bus" to refer to the entire ring domain. VLSI Supp. Br. 7-8.[3] This explanation, which Dr. Conte only raised in a self-serving declaration filed in response to Intel's *Daubert* motion (Appx18085-18086), cannot be squared with Dr. Conte's separate references to the ring "bus" and the ring "domain" in his report. *E.g.*, Appx3210(¶1236); Appx3215(¶1251); Appx18140-18141(¶121); Appx3218-3219(¶¶1280-1283). It also contradicts what VLSI said in its prior brief to this Court, where VLSI recognized that the "ring ***bus*** is part of … the ring ***domain***." Red Br. 59. And it is inconsistent with Dr. Conte's testimony that the ring "bus" is "a member of the ring domain." Appx2740; *see* Appx1383-1384 (distinguishing "bus" from "memory"). Regardless, whatever Dr. Conte intended, he and Dr. Annavaram undeniably considered power usage for the entire ring domain—which overstated the benefits attributable to the '759 patent.

---

[3] VLSI also cites a portion of Dr. Conte's trial testimony, but that just confirms that Dr. Annavaram measured power drawn by the "ring domain." Appx2722-2723.

Respectfully submitted,

/s/ William F. Lee

WILLIAM F. LEE
JOSEPH J. MUELLER
LAUREN B. FLETCHER
ALISON BURTON
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
William.Lee@wilmerhale.com

*Attorneys for Defendant-Appellant Intel Corporation*

AMANDA L. MAJOR
STEVEN J. HORN
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

MARY V. SOOTER
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
(720) 274-3135

October 23, 2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules and the Court's October 16, 2023 order because:

1. The filing has been prepared using a proportionally-spaced typeface and includes ten pages.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

October 23, 2023